

FILED by KS D.C.

Apr 26, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **22-20170-CR-SCOLA/GOODMAN**

18 U.S.C. § 371
18 U.S.C. § 545
18 U.S.C. § 2

UNITED STATES OF AMERICA,

v.

GZUNIGA, LTD.,
NANCY TERESA GONZALEZ de BARBERI,
DIEGO MAURICIO RODRIGUEZ GIRALDO, and
JOHN CAMILO AGUILAR JARMILLO,
    a/k/a "Jhon Camilo Aguilar Jaramillo,"
    a/k/a "JhonCa,"

                                           Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.    Defendant **GZUNIGA, LTD.** ("**GZUNIGA**") was a New York limited liability corporation established in 2007 that sold women's designer handbags (totes, purses, clutches, and wallets) made of caiman or python skin under the brand name "Nancy Gonzalez." **GZUNIGA's** offices and showroom were located at 5 East 57th Street, New York, New York.

2.    Defendant **GZUNIGA** was a subsidiary of Company A, a foreign company operating in Yumbo, Colombia, a suburb of Cali. Company A manufactured the women's accessories, including the designer handbags, sold by **GZUNIGA** to high-end retailers and at sample sales.

3. Defendant **NANCY TERESA GONZALEZ de BARBERI** ("**GONZALEZ**") was a citizen and resident of Colombia. She was the founder and president of both **GZUNIGA** and Company A as well as the principal designer of all the handbags sold by her two companies in the United States, Europe, and Asia.

4. Defendant **DIEGO MAURICIO RODRIGUEZ GIRALDO** ("**GIRALDO**") was a citizen and resident of Colombia and an employee of Company A.

5. Defendant **JOHN CAMILO AGUILAR JARMILLO** ("**AGUILAR**") was a citizen and resident of Colombia and an employee of and consultant for Company A.

6. To facilitate access to Company A's lucrative market in the United States, **GONZALEZ** established **GZUNIGA** and opened offices and a showroom in New York City. Each year, **GONZALEZ** would design a separate collection of sample caiman or python skinned handbags ("collection") to be displayed at the **GZUNUGA** showroom during New York City's "Fashion Week," which occurred annually in February and again in September. **GONZALEZ** also created a collection for "Resort Week," which takes place in New York City in June.

7. The Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 et seq., implemented the provisions of the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES") for the United States. See 16 U.S.C. § 1537a. Wildlife listed by CITES's 183 member nations were placed on one of three appendices and given a sliding scale of protection. See 50 C.F.R. Part 23. Appendix I included genera and species threatened with extinction, and was the most restrictive, banning any wildlife trade between countries for commercial purposes. Appendix II allowed commercial trade under a permit system for genera and species not considered in danger of imminent extinction, but that had to be controlled in order to avoid utilization incompatible with

survival. To export any species listed in Appendix II, the exporter had to apply for, and receive, a valid permit from the Management Authority of the host country. To obtain clearance of wildlife entering the United States, the importer had to make the CITES permit available to a U.S. Fish and Wildlife Service ("FWS") officer or a Customs and Border Protection ("CBP") officer. Appendix III included genera and species that were protected in at least one country that had asked the other CITES-member countries for assistance in controlling trade. All caiman species, with three exceptions, were listed in CITES Appendix II. All python species, with one exception, were listed in CITES Appendix II. The caiman species exceptions and the python subspecies exception, were all listed in Appendix I.

8. Under the ESA it is unlawful for any person subject to the jurisdiction of the United States to engage in any trade of any specimens contrary to the provisions of CITES, or to possess any specimens traded contrary to the provisions of CITES. 16 U.S.C. § 1538(c). It is also unlawful for any person importing or exporting wildlife to fail to file any declaration or report as the Secretary of the Interior deems necessary to facilitate enforcement of the ESA or to meet the obligations of CITES. 16 U.S.C. § 1538(e).

9. Under 50 C.F.R. § 10.12, the term "wildlife" meant any wild animal, whether alive or dead, including, without limitation, any wild mammal, bird, reptile, amphibian or fish, whether or not bred, hatched or born in captivity, and including any part or product thereof.

10. Under 50 C.F.R. § 14.52(a), a FWS officer was required to clear any and all wildlife imported into the United States.

11. Under 50 C.F.R. § 14.52(c), to obtain clearance of wildlife, an importer, exporter or authorized agent was required to make available to an officer of the FWS or CBP all shipping

documents; all permits, licenses or other documents required by the laws of the United States; all permits or other documents required by the laws of or regulations of any foreign country; and any documents and permits required by the country of export or re-export for the wildlife.

12. Under 50 C.F.R. § 14.61, all importers or their agents were required to file with the FWS a completed Declaration for Importation or Exportation of Fish and Wildlife, Form 3-177 ("Declaration Form 3-177"), signed by the importer or the importer's agent, upon the importation of any wildlife where FWS clearance under 50 C.F.R. § 14.52 was required. Declaration Form 3-177 required, among other things, an accurate listing of the genus, species, and common name of the item being imported, a description code for the item, the quantity being imported, the country of origin, the purpose of the importation, and the identification number of any permit authorizing the importation.

## COUNT 1
### Conspiracy
### (18 U.S.C § 371)

1. The allegations contained in paragraphs 1 through 12 of the General Allegations section of this Indictment are realleged and incorporated as if fully set forth herein.

2. Beginning on or about February 4, 2016, and continuing through on or about April 4, 2019, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**GZUNIGA, LTD.,
NANCY TERESA GONZALEZ de BARBERI,
DIEGO MAURICIO RODRIGUEZ GIRALDO, and
JOHN CAMILO AGUILAR JARAMILLO,
a/k/a "Jhon Camilo Aguilar Jaramillo,"
a/k/a "JhonCa,"**

did willfully, that is with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other, and others known and unknown to the Grand Jury

4

to commit certain offenses against the United States, that is: (a) to fraudulently and knowingly import and bring into the United States merchandise, to wit, wildlife, contrary to law, specifically without a CITES permit and Declaration Form 3-177, in violation of Title 18, United States Code, Section 545; and (b) to defraud the United States by impeding, impairing, obstructing and defeating the lawful government functions of the FWS, in the inspection, monitoring, management, control, and regulation of the importation of wildlife into the United States and enforcement of federal wildlife laws.

## Purpose of the Conspiracy

3.      It was the purpose of the conspiracy for the Defendants and their co-conspirators to clandestinely import into the United States from Colombia products produced from protected species of wildlife, in violation of federal law, thereby enriching themselves upon the sale of the contraband products in the United States.

## Manner and Means of the Conspiracy

The manner and means by which the Defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      Importing and bringing into the United States wildlife merchandise from Colombia without a CITES permit or Declaration Form 3-177.

5.      Soliciting individual couriers to import wildlife merchandise into the United States from Colombia without a CITES permit or Declaration Form 3-177, by paying their travel expenses and providing monetary compensation for their services.

6. Transporting and facilitating the transportation of illegally imported wildlife merchandise from airports in the United States to the **GZUNIGA** showroom in New York City for display to retailers and subsequent sale of the imported wildlife merchandise.

## Overt Acts

In furtherance of the conspiracy and to effect the objects and purpose thereof, at least one of the co-conspirators committed and caused to be committed, within the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

**2016 Imports**

1. On or about February 8, 2016, defendant **GIRALDO** traveled from Colombia to John F. Kennedy International Airport ("JFK") in New York City on Avianca Airlines with designer handbags made from caiman skin without a CITES permit or presentation of a Declaration Form 3-177.

2. On or about February 12, 2016, defendant **AGUILAR** recruited two co-conspirators, Courier-1 ("C1") and Courier-2 ("C2"), to transport designer handbags from Colombia to the United States.

3. On or about February 12, 2016, defendant **GONZALEZ** met with C1 and C2 at Company A and showed them eight designer handbags to be imported into the United States from Colombia.

4. On or about February 12, 2016, defendant **GONZALEZ** provided instructions to C1 and C2 on how to travel and transport the bags and what to say to CBP should the couriers be detained.

5. On or about February 13, 2016, defendant **GIRALDO** traveled from Colombia to

JFK on Avianca Flight 20, for the purpose of collecting designer caiman skin handbags from C1 and C2 that were to be imported into the United States without a CITES permit or presentation of a Declaration Form 3-177.

6. On or about February 13, 2016, C1 and C2, traveling on Avianca Airlines flight 42 from Colombia to JFK, imported eight caiman skin designer handbags without a CITES permit or presenting a Declaration Form 3-177.

7. On or about June 4, 2016, **GZUNIGA** received twelve designer handbags made from caiman skin, which were imported into the United States without a CITES permit or presentation of a Declaration Form 3-177, by couriers who travelled from Colombia.

8. On or about June 5, 2016, **GONZALEZ** caused thirty-two designer handbags made from caiman skin to be imported into the United States from Colombia by couriers traveling by passenger airline without a CITES permit and Declaration Form 3-177.

9. On about August 9, 2016, defendant **GIRALDO** imported two caiman skin designer handbags into the United States by passenger airline from Cali, Colombia, to JFK without a CITES permit or presenting a Declaration Form 3-177.

10. On or about September 5, 2016, **GONZALEZ** caused thirty-two designer handbags made from caiman to be imported by couriers from Colombia traveling on passenger airlines to various airports in the United States, without a CITES permit or presentation of a Declaration Form 3-177.

11. On or about September 6, 2016, defendant **GIRALDO** traveled from Colombia to Newark Liberty International Airport ("NLIA"), Newark, New Jersey, with four caiman skin designer handbags without a CITES permit or presenting a Declaration Form 3-177.

12. On or about September 7, 2016, **GIRALDO** falsely stated to an FWS Special Agent that four designer handbags he imported into the United States without a CITES permit or presentation of a Declaration Form 3-177 were personal items to be gifted to a friend.

13. Between on or about October 9, 2016, and October 10, 2016, defendant **GONZALEZ** and other couriers traveled from Colombia to the United States on passenger airlines importing approximately eighteen caiman skin designer handbags without CITES permits and without presenting any Declaration Form 3-177.

**2017 Imports**

14. On or about January 17, 2017, a courier traveling from Colombia through Miami International Airport ("MIA") to an airport in New York City, imported approximately six caiman skin designer handbags into the United States without a CITES permit or presentation of a Declaration Form 3-177.

15. On or about July 11, 2017, defendant **AGUILAR** sent to the **GZUNIGA** General Manager in New York City an email with two invoices attached, each listing a caiman skin designer handbag that was illegally imported into the United States on July 10, 2017, from Colombia without a CITES permit or presentation of a Declaration Form 3-177.

16. On or about September 8, 2017, defendant **GIRALDO** confirmed with the **GZUNIGA** General Manager in New York City that twenty designer handbags made from caiman skin had been delivered to the General Manager.

17. On or about October 5, 2017, defendant **AGUILAR** by email provided the **GZUNIGA** General Manager in New York City an invoice for twelve caiman skin designer handbags that had been sent with couriers from Colombia to the United States.

**2018 Imports**

18. On or about February 13, 2018, couriers traveled from Colombia to MIA with approximately twenty-eight designer handbags made from caiman skin or python skin to be delivered to the **GZUNIGA** General Manager in New York City.

19. On or about June 7, 2018, couriers traveled from Colombia to MIA with approximately twenty-four designer handbags made from caiman skin or python skin to be delivered to the **GZUNIGA** General Manager in New York City.

20. Between on or about September 2, 2018, and on or about September 4, 2018, couriers traveled from Colombia to MIA with approximately twenty-seven designer handbags made from caiman skin or python skin, to be delivered to the **GZUNIGA** General Manager in New York City, without CITES permits or any Declaration Form 3-177.

**2019 Imports**

21. On or about February 27, 2019, defendant **AGUILAR** sent an email to the **GZUNIGA** General Manager attaching eighteen invoices for approximately twenty-six caiman skin designer handbags that had been sent with couriers from Colombia to the United States.

22. On or about March 13, 2019, co-conspirator Paola Soto and three couriers traveled on American Airlines flight 920 from Colombia to MIA with approximately twenty-eight caiman skin designer handbags without CITES permits or presentation of any Declaration Form 3-177, with the intent to deliver said merchandise to the **GZUNIGA** showroom in New York City.

23. On or about April 2, 2019, co-conspirator Paola Soto provided airline tickets and monetary compensation to a courier to transport three caiman skin designer handbags from Colombia to the United States with the intent to deliver said merchandise to the **GZUNIGA**

showroom in New York City.

24. On or about April 4, 2019, a courier traveled on American Airlines flight 920 from Colombia to MIA, with three caiman skin designer handbags without a CITES permit and without presenting a Declaration Form 3-177, with the intent to deliver said merchandise to the **GZUNIGA** showroom in New York City.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### Smuggling Goods into the United States
### (18 U.S.C. § 545)

1. The allegations contained in paragraphs 1 through 12 of the General Allegations section of this Indictment are realleged and incorporated as if fully set forth herein.

2. On or about March 13, 2019, in Miami-Dade County, within the Southern District of Florida and elsewhere, the defendants,

**GZUNIGA, LTD.,
NANCY TERESA GONZALEZ de BARBERI,
DIEGO MAURICIO RODRIGUEZ GIRALDO, and
JOHN CAMILO AGUILAR JARMILLO,
a/k/a "Jhon Camilo Aguilar Jaramillo,"
a/k/a "JhonCa,"**

did fraudulently and knowingly import and bring into the United States merchandise, that is: twelve designer tote bags and sixteen designer purses made from the skin of wildlife listed in CITES Appendix II, contrary to law, that is, Title 16, United States Code, Section 1538(c) and Title 50, Code of Federal Regulations, Section 14.61, in violation of Title 18, United States Code, Sections 545 and 2.

## COUNT 3
### Smuggling Goods into the United States
### (18 U.S.C. § 545)

1. The allegations contained in paragraphs 1 through 12 of the General Allegations section of this Indictment are realleged and incorporated as if fully set forth herein.

2. On or about April 4, 2019, in Miami-Dade County, within the Southern District of Florida and elsewhere, the defendants,

**GZUNIGA, LTD.,
NANCY TERESA GONZALEZ de BARBERI,
DIEGO MAURICIO RODRIGUEZ GIRALDO, and
JOHN CAMILO AGUILAR JARMILLO,
a/k/a "Jhon Camilo Aguilar Jaramillo,"
a/k/a "JhonCa,"**

did fraudulently and knowingly import and bring into the United States merchandise, that is, two designer purses and one designer wallet made from the skin of wildlife listed in CITES Appendix II, contrary to law, that is, Title 16, United States Code, Section 1538(c) and 50 C.F.R. § 14.61, in violation of Title 18, United States Code, Sections 545 and 2.

A TRUE BILL

FOREPERSON

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Thomas A. Watts-FitzGerald
Assistant United States Attorney

Richard J. Powers
Trial Attorney
Environmental Crimes Section

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO.: |
|---|---|
| v. | |
| GZUNIGA, LTD., et al. | **CERTIFICATE OF TRIAL ATTORNEY*** |
| _____/ Defendants. | **Superseding Case Information:** |

**Court Division** (select one)

- ☑ Miami   ☐ Key West   ☐ FTP
- ☐ FTL    ☐ WPB

New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of New Counts _____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish

4. This case will take  5  days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I    ☑ 0 to 5 days
   - II   ☐ 6 to 10 days
   - III  ☐ 11 to 20 days
   - IV   ☐ 21 to 60 days
   - V    ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☑ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Altonaga   Case No. 22-CR-20001-CMA

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

By: _____
THOMAS WATTS-FITZGERALD
Assistant United States Attorney
FLA Bar No.   0273538

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: <u>GZUNIGA, LTD.,</u>

**Case No**: _____

Count #: 1

<u>Conspiracy</u>

<u>Title 18, United States Code, Section 371</u>

\* **Max. Penalty**: <u>$500,000 Fine</u>

Counts #: 2 - 3

<u>Smuggling</u>

<u>Title 18, United States Code, Sections 545 and 2</u>

\* **Max. Penalty**: <u>$500,000 Fine</u>

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: <u>Nancy Teresa Gonzalez de Barberi</u>

**Case No**: _____

Count #: 1

<u>Conspiracy</u>

<u>Title 18, United States Code, Section 371</u>

\* **Max. Penalty**: <u>5 years imprisonment</u>

Counts #: 2 - 3

<u>Smuggling</u>

<u>Title 18, United States Code, Sections 545 and 2</u>

\* **Max. Penalty**: <u>20 years imprisonment</u>

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: Diego Mauricio Rodriguez Giraldo

**Case No**: _____

Count #: 1

Conspiracy

Title 18, United States Code, Section 371

\* **Max. Penalty**: 5 years imprisonment

Counts #: 2 - 3

Smuggling

Title 18, United States Code, Sections 545 and 2

\* **Max. Penalty**: 20 years imprisonment

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: John Camilo Aguilar Jarmillo

**Case No**: _____

Count #: 1

Conspiracy

Title 18, United States Code, Section 371

* **Max. Penalty**: 5 years imprisonment

Counts #: 2 - 3

Smuggling

Title 18, United States Code, Sections 545 and 2

* **Max. Penalty**: 20 years imprisonment

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.